Good morning, Your Honor. It's Ajay Matthew appearing for the petitioner. Good morning. Good morning. I'd like to reserve two minutes for rebuttal. Okay. Your Honor, it is the petitioner's position that the board should have remanded this case back to the immigration judge for the immigration judge to apply the presumption and determine whether the presumption had been rebutted by the government. The board committed legal error in assuming that the judge had already applied the presumption and determined that the DHS had rebutted the presumption when, in fact, she had never even found there to be past persecution for the presumption to apply. The board cannot adopt a finding that the IJ has never made, particularly a factual finding. I believe this case is controlled by 8 CFR 1003.1D4, which says that under this regulation, the board may not engage in its own fact-finding in the course of deciding appeals and that if further finding, fact-finding is necessary to resolve the case, the board should remand to the immigration judge. In this case, further fact-finding was necessary. What is the nature of fact-finding when one is talking about the issue of changed country conditions? The board reviews that based on the evidence that's put in, usually, as it were in this case, country reports. Is the board precluded from arriving at a different conclusion or the same conclusion, although there was, take your point that IJ didn't opine on it, but isn't it really a question of mixed question of fact and law? It is a mixed question of fact and law, but like other courts have held in, for example, the 11th Circuit in the most recently, in just a couple months ago in Zhu, it's a predictive question of fact. So the first question is, what are the changed country conditions? Are there changed country conditions? And if so, how have they changed? That's a question of fact. Secondly, in light of those changed country conditions, what is likely to happen to the petitioner if he were returned to the country of origin? That itself is a question of fact, and four or five different circuit courts have said that, including, Your Honor, sir, in Redor when you cited Third Circuit's case in Kaplan. Right. So, you know, it is important for the judge to make that fact determination in the first instance and not the board, because the board is not allowed to engage in fact-finding in deciding appeals. So if it goes back to the IJ, what facts do you believe have to be determined? The judge will determine whether, in fact, country conditions have changed, and if so, how. In more than just one sentence, which is pretty much all she has in her decision. Yes, there's further fact-finding in terms of Kat, but in terms of her just ‑‑ in terms of just her fact-finding in terms of ‑‑ there's just one paragraph on page 75 of the record, and all she says is the period of militancy has ended. But there needs to be individualized analysis as to how that applies to the Petitioner. And there needs to be ‑‑ that would ‑‑ that individualized analysis should encompass some fact-finding as to what she thinks would be likely to happen or not likely to happen to Petitioner if he were to return to the country of origin. So I would ‑‑ those would be the fact-finding determinations that the judge should make explicitly in her decision. So let's assume we didn't agree with you. We said we can review it. The board was within its rights to look at it as a matter of law, and it concluded that the country conditions have changed. So what's your argument as to why there hasn't been any individualized analysis of Mr. Singh? What would you be asking or telling us was the failure of the board's analysis? Well, I don't think the board applied a de novo legal analysis. I don't think they were applying a legal standard to establish facts. If you look at their decision, they ‑‑ it indicates that they were applying clearly erroneous standard, that they had presumed that the judge had made findings of fact. Because if you look at their decision, it says that we do not find the fact that the police are reported to have made inquiries as to his whereabouts to mandate a contrary result. That shows that they're doing a clearly erroneous review, not a de novo legal review. So they're presuming that the facts were found by the judge, and they're reviewing those to see if they're clearly erroneous, when the judge, in fact, never made those type of determinations. And even the board has said that when ‑‑ that the presumption needs to be applied explicitly and the burden of proof has to be shifted explicitly to the Department of Homeland Security in order for the board to make a finding on that. And that's in matter of DIM. That's also ‑‑ well, that's the main case, is matter of DIM, where the board has held that. And ‑‑ Kennedy. What's your argument on the Catt claim? My argument on the Catt claim is that, yes, a reasonable fact finder would be compelled to conclude that Petitioner has a greater than 50 percent or probability of torture because the police are still looking for him, evidence of his past torture, evidence that the police are saying that militancy is being revived in India. Human rights reports, particularly the NSAF report, which shows that in that period when there was just a bomb blast in Delhi in May of 2005, the two to three month period after that, the police arrested 70 individuals and ‑‑ on terrorist related charges. But what's the evidence of torture? For the Petitioner? Well, the fact that those people had been tortured. The NSAF documented 28 cases of torture. In what years? This was in 2005. And so it goes to show that any time there's any type of untoward incident, such as a bomb blast in the area, they will likely pick up Petitioner, arrest him, detain him and torture him. And this is not mere speculation, since they did that to ‑‑ in 28 cases. What's the evidence that he, that the police are still looking for him? The record indicates at least your claim is, or his claim is that his uncle told him it was in 2002, 2003 time frame? I believe he said that they're still looking for him. What's the evidence? That's just his testimony? Just his ‑‑ it was his testimony in an affidavit from the uncle. Yes. And I looked at those, and his uncle doesn't date the events of inquiry. What is one supposed to believe the most recent, according to Mr. Seng, the most recent effort by the police to locate him? I would defer to the judge's finding that she, I think she did say that the judge said that the police are still looking for him. So, and, you know, I'd have to look at his testimony to see if he gave a time frame. Okay. Save your time for rebuttal. Sure. Thank you. Good morning, Your Honors. Ann Wellhoeffer, Respondent, Attorney General Holder. May it please the Court. Your Honor, Respondent would acknowledge in this case that the immigration judge's decision is not the model of clarity. However, I do not believe ‑‑ I believe there's been numerous factual findings that occurred in that, in the immigration judge's decision, that were found and used by the board properly to find that the government had rebutted the presumption by preponderance of the evidence. For example, the immigration ‑‑ to the extent the board adopted the IJ's decision, the board agreed that Petitioner did not show he had a well-founded fear of future persecution. Under the law, that could have been because, one, he didn't make it in his case in necessary if no past persecution was shown. If we presume it was, as the board did here, he still hasn't shown it if DHS has rebutted the presumption. And in finding that DHS had done this, the board did not engage in factfinding. The board looked very ‑‑ Assuming that the BIA did not engage in prohibited factfinding, did the IJ make an individualized determination as to how change country conditions apply to Petitioner specifically? So, for example, the IJ had referenced a ‑‑ at the time of unrest was, I think, in the mid‑1990s, he referenced that. But I didn't see a linkage to the Petitioner's allegations because there were arrests in 2001 and, I believe, 2002 as well. So how did the IJ link it to Petitioner in this case? Well, I think he did because of a couple of things. First, this particular ‑‑ the IJ was very specific to what occurred in this case. What occurred in this case was the police came after Petitioner solely, not because of any militant activities on his behalf or personally or because of his own opinion, because of his supposed knowledge of or linkage to individuals who were militants. Those people are all, not to be disrespectful, but they're all deceased now. Apparently, they've been deceased for some seven years. The IJ notes that the very people from whom this opinion has been imputed no longer are around, and there's really no evidence to show that they had any other interest in this particular person. The IJ said, given those unique circumstances, we don't see how all of the evidence pertaining to persecution, torture of ongoing militant Sikhs who are still, you know, advocating for the militant causes. They said, how does this relate to this particular individual? He has never expressed any particular political opinion or never been involved in that kind of thing. I think that the IJ specifically distinguished the individual's case from all the documents in the record upon which Petitioner was relying. So I think that represents an individualized analysis. Additionally, the IJ talked kind of on pages 23 of its decision, and 24 went on about how relocation was possible for him. Relocation is another reason that he's not. Well, that's not what the board adopted. Well, you know, the board cited Bourbono and adopted the finding there was no well-founded fear, which means he was not. But, counsel, come on. I'm looking at the BI's decision and their whole thrust of their final paragraph, penultimate paragraph, is that they're agreeing with the IJ's presumed finding that you've rebutted and shown change country conditions. Well, Your Honor, Your Honor. They're not talking about relocation or whatever. They don't even reach it. Well, agreed, Your Honor. What you're asking us to do, I think what you're asking us to do is say, well, if we don't agree with your argument that they made an adequate individualized analysis about change country conditions, we can revert to the IJ's notion that he could nonetheless relocate within India. That's not the analysis that the board made. But the board did not explicate further on that point. It did adopt and affirm under Bourbono the finding that there was no well-founded fear of future persecution. And it added its own commentary as to the country conditions. But I feel then taking what you said. Okay. Let me tell you the problem. You started with the premise that the IJ's opinion is not the model of clarity. And then we go to the BIA, which mistakenly assumes that the IJ made a finding it didn't. And now you're asking us to say, well, they cited Bourbono, so they adopted, we're supposed to find from, assume from that, that the BIA understood the IJ's opinion, which you have already characterized as not, and I appreciate your candor, not a model of clarity. That puts us in a very awkward position when. Just a second. Awkward position because there is clearly evidence that the BIA accepted as credible overriding the IJ's adverse credibility finding, saying that all of this evidence of mayhem that's been visited upon Mr. Singh's family was true. So this is a case that seems fraught with risk if, in fact, we were to reach out and say, well, gee, this is good enough for government work. And I'm having trouble with that. Okay. Your Honor, then I want to clarify. I'm not asking you to – if we focus on the analysis with changed country conditions, it's the Respondent's position that the factual findings in the board, or by the IJ, I believe, were clear. What was not the model of clarity, I think they muddled the analysis a bit and put all those important factual findings, really kind of muddled them and put them under the CAD analysis. But all those findings about that the particular circumstances of this individual didn't comport with the dangers to militants that were explained in the materials, the change in country conditions, that the insurgency is over, all those are relevant to the finding of whether the presumption he will be harmed when he returns is rebutted. And the board did not find – make those findings. It relied on the findings of fact of the board, of the IJ, and found that based on those findings, I believe under the Court's precedent that the IJ did not engage in improper fact finding. It took those facts and the board never – the board gave him the presumption and then looked at the evidence and facts as found by the IJ and found – applied a legal standard whether the presumption was rebutted. Under this Court's – Kagan, saying that the period of counterinsurgency is over without acknowledging or analyzing the fact that the plaintiff testified, deemed credibly by the BIA, that   fact finding. Now, in this case, did the IJ ever talk about that or reconcile that in any way in conducting its individualized determination of change country conditions in this case? Well, I think that he did and that those individuals, which were the sole reason that he was being pursued – there's no evidence that this Petitioner now has relevant information to anybody involved with the militant movement. All the people that he had information about are apparently gone, and there's been no – there's nothing – he has no – he has not testified that he was involved in the movement himself or that he's engaged in activities back then in India or now. There's nothing – his – I believe that the agency did look at the facts of his particular persecution and say that the evidence presented to show that he's still at risk is distinguishable. And I don't believe that it was improper fact finding. If you look at two recent cases of this Court, the Rodori case and Rodriguez case, where the Court did find that the board engaged in improper fact finding, you actually had the board overturning factual findings. In Rodori, the I.J. had found the conditions in the Haitian prisons were horrible and had grossly worsened in recent years. The board came in and said, no, conditions haven't worsened, so therefore, you're not at risk. That's overturning a factual finding. That's not what happened here. The I.J. said conditions, and in particular with respect to this alien, those conditions don't place him at risk, particularly given he's not in himself involved in the militant movement, wasn't high-ranking official. At most, it's just a rank-and-file Sikh that wasn't even involved in the movement. The board accepted that fact and then asked the question properly, I believe, whether that rebuts the presumption of past persecution, that the board properly applied because the immigration judge had not. I think the board acted to correctly, really, in error by the I.J. Roberts. Thank you, counsel. Thank you. Your Honor, counsel for the government is basically speaking for the judge when she made her own individualized analysis about why the presumption has been rebutted. I don't think she – I think the judge has to make that analysis, not counsel for the government. And I would point to the fact that in terms of continuing fear, counsel for the government said, oh, all the people are dead, why would they be still seeking information from him? But the people the police were seeking information from him about were not the family members that ended up dying. They were people associated with those family members. And furthermore, there's a – What's the record on that? The record on that? Who they were looking for? Oh, the people, there were these photographs that they were showing. What's the evidence? Oh, it's his testimony. Okay. Yeah. And they're people that are still alive? We don't know. Yeah, I mean, we don't know who those people are. He didn't know who those people are. So – but there's an article on page, I think, 407 of the record, which talks about how a militant came back from Belgium after 15 years, and police arrested him within one month of his arriving back in India. So the fact that passage of time is irrelevant. If police are still interested in you and you come back to India, they will find you, and apparently very quickly. I would also argue that the IJ's analysis of country conditions in CAT is not applicable to rebutting the presumption, because CAT is distinct from asylum. For the reasons I've set out in the brief, that there's no presumption, that torture and persecution are distinct concepts from each other, and that the burden of proof is very different in terms of who has the burden of proof and in terms of more likely than not versus, you know, well-founded fear. Thank you, Your Honor. Thank you. Thank you, counsel. We appreciate the argument. Case is submitted.
judges: Garbis, Fisher, Nguyen